# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

SANDRA K. MILES,                          )
                                          )
                Plaintiff,            )
                                          )
v.                                        )   Case No. CIV-13-469-FHS-KEW
                                          )
CAROLYN W. COLVIN, Acting                 )
Commissioner of Social                    )
Security Administration,                  )
                                          )
                Defendant.            )

## REPORT AND RECOMMENDATION

Plaintiff Sandra K. Miles (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act.  Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled.  For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied.  <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164

(10th Cir. 1997)(citation omitted).  The term "substantial

evidence" has been interpreted by the United States Supreme Court

to require "more than a mere scintilla.  It means such relevant

evidence as a reasonable mind might accept as adequate to support

a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)

(quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229

(1938)).  The court may not re-weigh the evidence nor substitute

its discretion for that of the agency.  <u>Casias v. Secretary of

Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991).

Nevertheless, the court must review the record as a whole, and the

"substantiality of the evidence must take into account whatever in

the record fairly detracts from its weight."  <u>Universal Camera

Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d

at 800-01.

### Claimant's Background

Claimant was born on July 4, 1956 and was 56 years old at the

time of the ALJ's decision.  Claimant completed her high school

education and two year associate degree in child development.

Claimant has worked in the past as a head start director and family

service worker for Ki Bois Community Action and as a housekeeping

supervisor at a medical clinic.  Claimant alleges an inability to

work beginning August 31, 2010 due to limitations resulting from ulcerative colitis, depression, plantar fasciitis, arthritis, sciatic nerve problems, and incontinence.

## Procedural History

On September 23, 2010, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. An administrative hearing was conducted by Administrative Law Judge Osly F. Deramus ("ALJ") on March 7, 2012 by video with Claimant appearing in McAlester, Oklahoma and the ALJ in Dallas, Texas. The ALJ issued an unfavorable decision on April 18, 2012. On April 26, 2013, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform her past relevant work as a childcare center director and housekeeper supervisor.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to

4

properly weigh the opinions of Claimant's treating physician; and (2) reaching an erroneous RFC assessment.

**Consideration of the Treating Physicians' Opinions**

In his decision, the ALJ determined Claimant suffered from the severe impairment of ulcerative colitis. (Tr. 22). He concluded that Claimant retained the RFC to perform a full range of light work by finding she could lift/carry 20 pounds occasionally and 10 pounds frequently, could stand/walk 6 hours in an 8 hour workday, and could sit for 6 hours in an 8 hour workday. (Tr. 26). He also found Claimant's past relevant work as a childcare center director and housekeeper supervisor did not require the performance of work-related activities precluded by Claimant's RFC. (Tr. 30). Claimant was found to have not been under a disability during the relevant period. (Tr. 31).

Claimant contends the ALJ failed to properly evaluate the opinions of Claimant's treating physician, Dr. Lori Ford. In a report dated September 22, 2010 entitled "Certification of Health Care Provider for Employee's Serious Health Condition (Medical Leave of Absence)", Dr. Ford stated Claimant could not control her bowels due to severe ulcerative proctitis despite medical treatment and hospitalization. (Tr. 492). She opined Claimant's beginning date of incapacity of September 1, 2010, noting Claimant was

hospitalized between September 1 and September 4, 2010.  (Tr. 491).

On February 21, 2011, Dr. Ford again noted Claimant suffered from active proctitis with bleeding.  She stated Claimant had difficulty sitting and must be in reach of a bathroom at all times. She concluded that Claimant "obviously cannot work."  (Tr. 561).

On April 26, 2011, Dr. Ford stated in a document entitled "Medical Opinion Re:  Absences From Work", that Claimant "can't control bowels!"  She stated that, on average, Claimant would miss work because of her impairment for "[a]bout three (3+) or more days per month."  (Tr. 565).  On the same date, Dr. Ford completed a form entitled "Medical Opinion Re:  Clinical Assessment of Pain" with regard to Claimant's condition.  She noted that pain was present to such an extent as to cause a limitation or restriction having more than a minimal effect on the ability to do basic work activities or activities of daily living on a day-to-day basis. She also stated Claimant would experience an increase of pain to such a decree as to cause inadequate functioning or total abandonment of the tasks of walking, standing, sitting, lifting, pushing, pulling, bending or stooping, reaching, carrying, handling, etc.  Dr. Ford also marked on the form that Claimant's pain would reduce her ability to perform basic mental work activities such as concentration or attention, memory, social

6

functioning, sustaining ordinary work stress, etc. such as to cause inadequate functioning or abandonment in these mental areas. Dr. Ford also stated that Claimant's medication side effects could be expected to be severe and to limit effectiveness due to distraction, inattention, drowsiness, etc. She identified the medical condition causing these restrictions to be ulcerative proctitis. (Tr. 567). In a medical opinion dated April 26, 2011, Dr. Ford found through a series of questions that Claimant could mentally function in the workplace but maintained she "can't control bowels." (Tr. 569).

Dr. Ford opined Claimant could not stand/walk for up to 2 hours in an 8 hour workday, could not sit for up to 6 hours in a normal seated position, could lift and carry 10 pounds, and would be required to take unscheduled breaks. She found that sustained employment would depend upon her disease activity. (Tr. 571). She noted Claimant suffered from severe rectal pain which waxed and waned with her disease activity. (Tr. 573). Claimant was found to not be able to sit due to pain and her inability to control her bowels. She reiterated that Claimant suffered from severe ulcerative proctitis. Dr. Ford also stated the condition was severe enough to frequently interfere with attention and concentration. (Tr. 574).

The ALJ found Dr. Ford's opinions to be "deficient and without supportive medical documentation." (Tr. 29). He found Dr. Ford's treatment records indicated Claimant's condition "waxes and wanes" with medication and her prognosis was "fair-good." The ALJ also took issue with some of the colorful language used by Dr. Ford in the completion of the functional forms. <u>Id</u>. The ALJ noted that Claimant consulted with a surgeon who determined Claimant's ulcerative proctitis was "not extensive" and did not warrant surgical intervention two months prior to Dr. Ford's opinion. The ALJ concluded Claimant could return to her past relevant work and Dr. Ford's opinions were not entitled to controlling weight. (Tr. 30).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." <u>Id</u>. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." <u>Id</u>.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific,

legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

While the ALJ refused to afford Dr. Ford's opinion controlling weight, he did not continue through the Watkins analysis to determined whether it was entitled to any lesser weight. Dr. Ford's opinions were supported by sigmoidoscopy testing which revealed severe ulcerative proctitis in Claimant's rectum. (Tr. 274-75, 322-23). Additionally, while the ALJ noted that a surgeon found Claimant's condition to be "not extensive," the note which the ALJ apparently relies upon is somewhat ambiguous. It does not appear to be written by the surgeon himself but rather a recording of another unidentified surgeon's statement. Moreover, the note also states that the neurosurgeon evaluating Claimant's back pain "wants to wait till (sic) UC is controlled more." (Tr. 625). This statement suggests the condition is not controlled. On remand, the ALJ shall consider whether, in light of the lengthy treating relationship between Claimant and Dr. Ford for her condition as well as the supporting objective testing, Dr. Ford's opinion is entitled to some lesser weight.

### RFC Evaluation

Claimant contends the ALJ improperly concluded Claimant could perform a full range of light work. The ALJ concluded Claimant's

ulcerative colitis was a severe impairment at step two but made no accommodation for the condition in her RFC without sufficient explanation. Timmons v. Barnhart, 2004 WL 2005931, 4 (10th Cir.)("At the very least, the ALJ should have explained how a 'severe' impairment at step two became 'insignificant' at step five.") The medical record supported some restriction upon Claimant's ability to engage in basic work activities caused by this condition which was not addressed in the ALJ's RFC analysis. On remand, the ALJ shall re-evaluate the evidence and determine whether the RFC should contain some limitation caused by Claimant's ulcerative colitis.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen

(14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 9th day of February, 2015.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE